UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

CHRISTINA L. FACCI-BRAHLER,

                  Plaintiff,

    -against-                                          1:18-CV-941 (LEK/MJK)

MONTGOMERY COUNTY, *et al.*,

                  Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Christina L. Facci-Brahler commenced this civil rights action on August 8, 2018. See Dkt. No. 1. Plaintiff later filed an amended complaint, Dkt. No. 21 ("First Amended Complaint"), and a second amended complaint, Dkt. No. 58 ("Second Amended Complaint"), asserting claims under 42 U.S.C. § 1983 and the New York Human Rights Law against Montgomery County, Montgomery County Sheriff Michael J. Amato ("Amato"), and Montgomery County Under Sheriff Justin Cramer ("Cramer") (collectively, "Defendants"). Defendants now move for summary judgment, Dkt. No. 76, and have provided a memorandum of law, Dkt. No. 76-33 ("Motion"), and a statement of material facts, Dkt. No. 76-32 ("Statement of Material Facts" or "SMF"). Plaintiff has filed a response, Dkt. No. 80-11 ("Response"), a response to Defendants' Statement of Material Facts, Dkt. No. 80-10 at 1–16[1] ("Response to Statement of Material Facts" or "RSMF"), and a statement of additional material facts, id. at 16–24. Defendants have filed a reply. Dkt. No. 81 ("Reply").

For the reasons that follow, Defendants' Motion is granted in part and denied in part.

---

[1] Page numbers refer to ECF pagination.

## II.   BACKGROUND

The Court assumes familiarity with Plaintiff's factual allegations and the procedural posture of this case, which are detailed in this Court's previous Memorandum-Decisions and Orders. See Dkt. No. 18 at 2–4; Dkt. No. 29 ("March 2021 MDO") at 2. Relevantly, this Court dismissed multiple claims in Plaintiff's First Amended Complaint in the Court's March 2021 MDO. See Mar. 2021 MDO at 12.

On May 13, 2022, the Court approved a stipulation by both parties, see Dkt. No. 55 ("Stipulation"), and permitted Plaintiff to file her Second Amended Complaint. Dkt. No. 56. The parties filed the Stipulation in response to the United States Supreme Court's decision in Thompson v. Clark, 596 U.S. 36 (2022), which clarified the standard for a malicious prosecution claim under the Fourth Amendment. See Stipulation at 1; see also Thompson, 596 U.S. at 49 (explaining that a claim for malicious prosecution does not require a "plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence"). Accordingly, Plaintiff's Second Amended Complaint includes a federal constitutional claim for malicious prosecution, in addition to the claims that survived this Court's review in the March 2021 MDO. See Second Am. Compl. ¶¶ 73–79.

Plaintiff now maintains four claims against Defendants: (1) a 42 U.S.C. § 1983 claim for an equal protection violation of the Fourteenth Amendment of the U.S. Constitution; (2) discrimination in violation of the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL"); (3) retaliation in violation of the NYSHRL; and (4) a Section 1983 malicious prosecution claim under the Fourth and Fourteenth Amendments of the U.S. Constitution. Defendants seek summary judgment on each claim.

**III.    LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and

"eschew[s] credibility assessments," Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

The Court addresses Defendants' arguments in the order presented in the Motion.

### A. Fourteenth Amendment and NYSHRL Discrimination Claims

For Plaintiff to state a claim under Section 1983, "[she] must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Collymore v. New York, 767 Fed. App'x. 42, 45 (2d Cir. 2019) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted)). Once a plaintiff satisfies the Section 1983 color-of-law requirement, her equal protection claim parallels her NYSHRL claim. See Collymore, 767 Fed. App'x. at 45 ("Once the color of law requirement is met, a plaintiff's equal protection claim parallels her Title VII claim.") (internal quotation marks and alterations omitted) (citing Vega, 801 F.3d at 88); see also Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999) ("New York courts require the same standard for claims brought under the NY[S]HRL as for those brought under Title VII."); Sutter v. Dibello, No. 18-CV-817, 2021 WL 930459, at *20 (E.D.N.Y. Mar. 10, 2021) ("Employment discrimination claims pursuant to Title VII, Section 1983 and the NYSHRL are evaluated under essentially the same substantive standards." (citations omitted)).

4

"To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause, . . . plaintiffs must sufficiently allege that defendants acted with discriminatory intent." Id. (alteration omitted) (quoting Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 68 (2d Cir. 2015)). Where, as in the instant case, direct evidence of discrimination is lacking, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the defendant acted with discriminatory intent." Id. (internal quotation marks omitted). A plaintiff can "raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" Id. at *21 (quoting Hu v. City of New York, 927 F.3d 81, 96–97 (2d Cir. 2019)). Employees are "similarly situated in all material respects when the plaintiff and the putative comparator were subject to the same workplace standards." Id. (quoting Donohue v. Madison, No. 13-CV-918, 2020 WL 4432661, at *3 (N.D.N.Y. July 31, 2020)).

      *i.*   *Adverse Employment Action*

Defendants first argue that Plaintiff cannot demonstrate that she suffered an adverse employment action. See Mot. at 12. Defendants posit that because Plaintiff was simply "served with disciplinary charges," but was never actually terminated, Plaintiff suffered no "adverse job action." Id. Yet Plaintiff suffered more than merely service of disciplinary charges, as she was also suspended from her position without pay. As detailed in a June 23, 2016, email, Amato explicitly states that Plaintiff was "on suspension without pay." Dkt. No. 80-9. A May 20, 2016, email from Amato also states that Plaintiff was being placed on "suspension without pay for 30

5

days." Dkt. No. 80-8. It is well-established in this Circuit that "[s]uspension without pay constitutes adverse employment action." Benjamin v. Metro. Transp. Auth., No. 07-CV-3561, 2012 WL 3188764, at *10 (S.D.N.Y. Aug. 2, 2012) (citing Lovejoy–Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223–24 (2d Cir. 2003)). A reasonable trier of fact could therefore find that Plaintiff has established an adverse employment action.

    ii. *Inference of Discrimination*

  To raise an inference of discriminatory intent through disparate treatment, a plaintiff "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations omitted). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010) (citation and quotation marks omitted).

  Defendants argue that Plaintiff cannot show that Defendants acted with discriminatory intent, as Plaintiff has failed to raise an inference of discrimination. See Mot. at 13. Plaintiff argues that a trier of fact could find such an inference, as "Stephanie Crewell ['Crewell'], a white cook who brought her cell phone into the jail was not arrested, criminally charged, or served disciplinary papers seeking her termination, was subject to the same workplace standards as Plaintiff." Resp. at 19. Both parties agree that Crewell was a white employee who had a personal phone in the jail and was not terminated or suspended. See SMF ¶¶ 10–11, RSMF ¶¶ 10–11. Yet Defendants argue that Crewell was not "similarly situated" to Plaintiff, and therefore cannot be used as "a comparator outside of [Plaintiff's] protected group." Mot. at 13. Specifically, Defendants state that Crewell only brought a personal phone into the prison, whereas Plaintiff

6

engaged in the "much more egregious conduct" of, *inter alia*, giving her phone to an inmate and fraternizing with the inmate. Id. at 13–14. For this reason, Defendants argue that Plaintiff cannot meet the second element of the Ruiz standard, as Crewell's conduct was not comparable to Plaintiff's. See id.

To support their argument, Defendants draw this Court's attention to Cooper v. Templeton, 629 F. Supp. 3d 223 (S.D.N.Y. 2022), aff'd sub nom. Cooper v. Franklin Templeton Invs., No. 22-2763, 2023 WL 3882977 (2d Cir. June 8, 2023). That case focused on a plaintiff who was fired after a video showing the plaintiff harassing an African American man in Central Park "became international news as a racial flashpoint." Id. at 228. The Cooper plaintiff attempted to argue that her employer discriminated against her by pointing to employees outside of her protected group who were not fired despite having engaged in controversial actions. See id. at 231. The Cooper court ultimately found that these comparator employees were not sufficiently similar to Plaintiff, as the conduct of those employees was "simply too different in kind to be comparable to [the plaintiff's] conduct in this case." Id. at 232. Defendants argue that Plaintiff's conduct is similarly "too different in kind to be comparable" with Crewell's conduct. Mot. at 13.

Defendants' Cooper analogy fails, however, because the difference in conduct in Cooper was far starker than this case. In Cooper, the comparator employees' conduct included being "fined and subjected to a market ban for insider trading by the Securities and Exchange Board of India," making offensive sexual remarks to a client, engaging in sexual harassment, conducting plagiarism, and having criminal records. Cooper, 629 F. Supp. 3d at 231. The Cooper court found that this conduct did not come "close to becoming . . . international news as a racial flashpoint" and thus was not comparable to the conduct of the plaintiff. Id. at 232. Here, by

7

contrast, the factual predicate between Plaintiff and Crewell is much closer. Both Plaintiff and Crewell violated work policy by bringing phones into the jail, and it was this violation that served as a key part of Plaintiff's first charge in the Notice of Discipline. See SMF ¶ 21 (noting that the first charge states that "as a Corrections Officer, you brought your personal cell phone into the County Jail"); RSMF ¶ 21. This factual similarity leads the Court to the conclusion that a reasonable trier of fact could find Crewell an acceptable comparator.

The Court recognizes that Plaintiff was charged with additional violations. See SMF ¶ 22; RSMF ¶ 22. However, the Court cannot escape the fact that Plaintiff was explicitly charged in the Notice of Discipline for the same activity that Crewell conducted. Furthermore, there appears to be a factual dispute as to whether Plaintiff's adverse employment action was in fact the product of these additional violations. Plaintiff turns the Court's attention to Dkt. No. 76-17 ("Criminal Information Form") and Dkt. No. 76-19 ("Amended Criminal Information Form"), which were filed by Cramer in support of Plaintiff's criminal prosecution. Those documents—which outline the alleged criminal activity conducted by Plaintiff—do not anywhere detail that Plaintiff engaged in acts beyond bringing her personal phone into the jail. See id. These documents could lead a reasonable fact-finder to conclude that Defendants were primarily concerned with Plaintiff's violation of the phone policy rather than any other violation, and that the main purpose behind the employment actions taken against Plaintiff were largely based on that violation (and not for the additional reasons that Defendants enumerate).

Finally, the Court emphasizes that on this particular issue, courts in this Circuit generally find that a jury is generally best positioned to make this determination. As the Second Circuit has stated: "Whether two employees are similarly situated ordinarily presents a question of fact for

the jury." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted). The Court therefore declines to grant summary judgment on this issue.

   *iii.* *Qualified Immunity*

Defendants argue that they "are entitled to qualified immunity for all of" Plaintiff's claims. Mot. at 2. A government official sued in his or her individual capacity is entitled to qualified immunity if the "plaintiff's right not to be subjected to [prohibited] conduct by the defendant was not clearly established at the time it occurred" or if "the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002) (cleaned up).

Here, "the Fourteenth Amendment right to be free from racial discrimination in employment was clearly established as of" the events of this action. Looby v. City of Hartford, 152 F. Supp. 2d 181, 189 (D. Conn. 2001). Furthermore, given that the Court has already found that Plaintiff has developed enough of a factual record for a reasonable jury to conclude that she was subject to racial discrimination, the Court cannot say at this juncture that Defendants' actions were "objectively legally reasonable." Munafo, 285 F.3d at 210; see also Denigris v. N.Y.C. Health & Hosps. Corp., 861 F. Supp. 2d 185, 196 (S.D.N.Y. 2012) (finding that because individuals have a clearly established right to be free from race discrimination and retaliation in employment, and that genuine issues of material fact exist as to whether the defendant personally engaged in intentional discrimination and retaliation, granting summary judgment based on qualified immunity would be inappropriate). Thus, the Court declines to grant summary judgment as to Plaintiff's NYSHRL and Equal Protection discrimination claims on the basis of qualified immunity.

B. **NYSHRL Retaliation**

"To state a retaliation claim under the NYSHRL, a plaintiff must allege that: '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" Wermann v. Excel Dentistry, P.C., No. 13-CV-7028, 2014 WL 846723, at *3 (S.D.N.Y. Feb. 25, 2014) (quoting Giudice v. Red Robin Int'l, Inc., 555 F. App'x 67, 68 (2d Cir. 2014)). "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks omitted). While a "substantial time lag between the protected activity and the adverse employment action" bodes poorly for a retaliation claim, a plaintiff may prove causation, alternatively, "by showing . . . that other similarly situated employees were treated differently." Allen v. St. Cabrini Nursing Home, Inc., 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002) (citation omitted). Employees must be similarly "situated in all material respects." Watson v. Arts & Ent. Television Network, No. 04-CV-1932, 2008 WL 793596, at *16 (S.D.N.Y. Mar. 26, 2008), aff'd, 352 F. App'x 475 (2d Cir. 2009) (citing Graham, 230 F.3d at 39). In a case "involving disparate treatment with regard to discipline, the plaintiff must show that the conduct of the other employee was of comparable seriousness." Lucibello v. Yale-New Haven Hosp., No. 03-CV-0814, 2005 WL 578324, at *6 (D. Conn. Mar. 10, 2005) (citing Padilla v. Harris, 285 F. Supp. 2d 263, 270 (D. Conn. 2003)).

Defendants concede that Plaintiff engaged in a protected activity when she filed a discrimination complaint in 2010. See Mot. at 17. Defendants also correctly note that Plaintiff

10

"attempts to prevail by pleading that a similarly situated employee (again, kitchen worker [] Crewell) was treated differently." Id.; see also Resp. at 21–23. However, as discussed above, Defendants argue that Crewell's conduct is not sufficiently similar to support an inference of causation. See Mot. at 17.

Defendants first argue that "[P]laintiff cannot establish an adverse employment action." Id. In making this argument, Defendants essentially restate the adverse employment action argument made with respect to the discrimination claims. See id. at 12. Yet as explained in supra Part IV.A.ii, Plaintiff experienced an adverse employment action when she was placed on suspension without pay. The argument therefore fails.

Defendants next argue that Crewell is not an appropriate comparator, outlining the ways in which Crewell's actions differed from Plaintiff's. See Mot. at 18. Again, this argument is essentially the same argument Defendants made with respect to the discrimination claims. As discussed in supra Part IV.A.ii, the Court is satisfied that a reasonable jury could find Crewell a suitable comparator. This argument thus also fails.

Defendants next suggest that Plaintiff is essentially pursuing a selective prosecution claim and that she did not establish the elements of such a claim. See Mot. at 18. This argument is unavailing, as Plaintiff is not arguing selective prosecution. Selective prosecution is a federal claim premised on a defendant's violation of a plaintiff's constitutional rights; in employment contexts, this typically involves a claim of an equal protection violation. See, e.g., Sharpe v. City of New York, No. 11-CV-5494, 2013 WL 2356063, at *4 (E.D.N.Y. May 29, 2013), aff'd, 560 F. App'x 78 (2d Cir. 2014) (noting in an employment law case that "courts in the Second Circuit have recognized equal protection claims predicated on the 'selective enforcement' theory" (citation omitted)). The Court is unaware of case law suggesting that a selective enforcement

11

theory may be made under NYSHRL. Furthermore, as outlined in the Court's March 2021 MDO, Plaintiff has in fact pled a *retaliation* claim. Mar. 2021 MDO at 9–10. There is thus no reason for this Court to evaluate Plaintiff's claim under a selective enforcement theory.

After reviewing the evidence presented by both parties, the Court is satisfied that there is enough of a factual dispute on this issue to preclude summary judgement. Plaintiff has identified plausible retaliatory conduct by presenting evidence of disparate treatment. A reasonable juror could therefore come to the conclusion that Plaintiff faced retaliation.

Additionally, the Court finds that qualified immunity does not apply for this claim. This is because "it has long been clearly established that individuals have the right to be free from intentional race discrimination and retaliation in employment, and genuine issues of material fact exist as to whether Defendant[s] [] personally engaged in intentional discrimination and retaliation against Plaintiff." DeNigris, 861 F. Supp. 2d at 196. Here, Plaintiff has presented a plausible case that her right to be free from retaliation was violated, and thus the Court cannot conclude at this time that Defendants' actions were "objectively legally reasonable." Munafo, 285 F.3d at 210. "Accordingly, a grant of qualified immunity is wholly inappropriate at this stage of the proceedings." DeNigris, 861 F. Supp. 2d at 196.

### C. Malicious Prosecution

"A plaintiff who brings a federal malicious prosecution claim must allege all the elements of malicious prosecution under state law." Oxman v. Downs, 999 F. Supp. 2d 404, 412 (E.D.N.Y. 2014) (citing Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)). "Under New York law, Plaintiff must prove four elements to establish a claim for malicious prosecution: (1) the initiation of a proceeding, (2) termination of said proceeding favorably to the plaintiff, (3) lack of probable cause, and (4) malice." Folk v. City of New York, 243 F. Supp. 3d 363, 373

(E.D.N.Y. 2017) (cleaned up). "Where a Fourth Amendment violation is asserted, the plaintiff must also plead some deprivation of liberty consistent with the concept of seizure." Id. (cleaned up).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citing Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983)). "For a malicious prosecution claim, probable cause to prosecute consists of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" Ying Li v. City of New York, 246 F. Supp. 3d 578, 611 (E.D.N.Y. 2017) (citing Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)).

Defendants argue that Plaintiff has failed to demonstrate the third element of malicious prosecution: lack of probable cause. Mot. at 20–21. The Court agrees. Under New York law, one commits the misdemeanor of promoting prison contraband in the second degree occurs when an individual "knowingly and unlawfully introduces any contraband into a detention facility." N.Y. Penal Law § 205.20. "Contraband" is defined as "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order." N.Y. Penal Law § 205.00.3. Courts in New York have recognized that personal cell phones are considered contraband. See, e.g., People v. Green, 119 A.D.3d 23, 25–32, 984 N.Y.S.2d 680, 681–85 (2014) (finding that a defendant's possession of a personal cell phone constituted "dangerous contraband").

Here, the Criminal Information Form filed by Cramer specifically outlines that Plaintiff was discovered to have had "in her possession her personal cell phone . . . and did introduce said cellphone into the Montgomery County Correctional Facility." Crim. Info. Form at 1. The

Amended Criminal Information Form similarly states that Plaintiff was discovered to have entered into the jail with her personal phone. See Am. Crim. Info. Form at 1. Furthermore, neither party disputes that Plaintiff knowingly had her phone in the jail. See SMF ¶ 18; RSMF ¶ 18. Given that Plaintiff was allegedly discovered by Defendants to have knowingly brought her phone into the jail—which is a violation of N.Y. Penal Law § 205.20—the Court is satisfied that Defendants had "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd, 336 F.3d at 76 (citation omitted). In other words, Defendants had probable cause.

Because Plaintiff cannot demonstrate that Defendants lacked probable cause, the Court grants summary judgement on this issue and dismisses her malicious prosecution claim.

**D. Damages**

Finally, Defendants argue that Plaintiff is not entitled to punitive damages and certain attorneys' fees. Mot. at 24–25. Plaintiff argues that the Court should not consider Defendants' argument, as "damages are not relevant to the burden of the parties on summary judgment." Resp. 27. Plaintiff's argument is misplaced, however, as "[d]istrict courts may grant summary judgment as to damages for which there exist no disputed issues of material fact." Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 474 (S.D.N.Y. 2014). The Court therefore evaluates whether summary judgment is appropriate with respect to both punitive damages and certain attorney's fees.

    *i.  Punitive Damages*

Plaintiff has requested punitive damages in the amount of $100,000.00. See Second Am. Compl. at 18. Considering that "[i]t is undisputed that the New York State Human Rights Law

14

does not provide for punitive damages," Plaintiff cannot recover punitive damages for her NYSHRL claims. Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001).

With respect to Plaintiff's equal protection claim (her sole surviving federal claim), "[p]unitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). A plaintiff must "have produced evidence of a positive element of conscious wrongdoing or malice." Cameron v. City of New York, 598 F.3d 50, 69 (2d Cir. 2010) (cleaned up). Here, the Court concludes that a reasonably jury could find "a positive element of conscious wrongdoing or malice" with respect to the equal protection claim. Id. Plaintiff has pleaded that the alleged discriminatory action was taken with direct intent of engaging in "unlawful discrimination." Compl. ¶ 9. Furthermore, courts in this Circuit have generally refrained from preventing prosecution of punitive damages on constitutional violation and discrimination claims that survive summary judgment. See, e.g., Weinberg v. Vill. of Clayton, New York, 537 F. Supp. 3d 344, 366 (N.D.N.Y. 2021) ("In this case, Plaintiffs have raised an issue of fact regarding Ingerson's motive in taking enforcement action against them. Therefore, the Court denies Defendants' motion for summary judgment on the issue of punitive damages against Ingerson."); Ragin v. Newburgh Enlarged City Sch. Dist., No. 06-CV-2797, 2009 WL 4906111, at *13 (S.D.N.Y. Dec. 17, 2009) ("Defendants contend that Plaintiff's demand for punitive damages under §§ 1981 and 1983 should be dismissed because both Saturnelli and Lewis acted reasonably and appropriately under the circumstances. On the present record, however, it cannot be said that Ragin has not raised a triable issue of fact as to whether the Defendants acted with the requisite malicious motive or intent with respect to the claims that

have survived summary judgment."); Lewis v. State of Connecticut Dep't of Corr., 355 F. Supp. 2d 607, 627 (D. Conn. 2005) ("Officer Lewis has raised sufficient issues of material fact as to whether Lieutenant Sousa displayed a malicious or reckless indifference to the racial discrimination at issue in this case, so that the Court cannot say as a matter of law at least at this stage that no reasonable juror could award Officer Lewis punitive damages on her claims against Lieutenant Sousa.").

In summary, the Court finds that Plaintiff may pursue punitive damages for her federal discrimination claim. Plaintiff may not pursue punitive damages for her NYSHRL claims.

    *ii.*  *Attorney's Fees for NYSHRL Claims*

Defendants argue that Plaintiff is not entitled to recover attorney's fees under NYSHRL because the statute only "provides for the award of attorney's fees in limited cases." Mot. at 25. Specifically, Defendants state that NYSHRL only provides for attorney's fees in cases involving discrimination in housing or on the basis of sex. See id. Yet this is a misreading of the statute. N.Y. Exec. Law § 297.10 specifically states that attorney's fees may be awarded "[i]n cases of employment discrimination." And as courts in this Circuit have specifically noted, NYSHRL "allows a prevailing party to recover attorneys' fees in cases involving housing discrimination, credit discrimination where sex is the basis of such discrimination, and *employment discrimination*." Panerese v. Shiekh Shoes, LLC, No. 19-CV-4061, 2020 WL 7041083, at *3 (E.D.N.Y. Dec. 1, 2020) (citations omitted) (emphasis added). Thus, Plaintiff is permitted to pursue attorney's fees for her NYSHRL claims.

**V.  CONCLUSION**

  Accordingly, it is hereby:

16

**ORDERED**, that Defendants' Motion, Dkt. No. 76, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiff's claim of malicious prosecution is **DISMISSED**; and it is further

**ORDERED**, that Plaintiff's demand for punitive damages for her NYSHRL claims is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 22, 2024
         Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge