UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINA L. FACCI-BRAHLER,

                Plaintiff,                1:18-CV-00941 (AMN/MJK)

    v.

MONTGOMERY COUNTY; MICHAEL J.
AMATO, SHERIFF OF MONTGOMERY
COUNTY; and JUSTIN CRAMER, UNDER
SHERIFF OF MONTGOMERY COUNTY,

                Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

**TOPOROWSKI LAW, PLLC**        **MATTHEW A. TOPOROWSKI, ESQ.**
PO Box 7271
Albany, New York 12224

**CAPEZZA HILL, LLP**             **BENJAMIN W. HILL, ESQ.**
30 South Pearl Street – Suite P-110
Albany, New York 12207
*Attorneys for Plaintiff*

**NAPIERSKI, VANDENBURGH LAW FIRM**   **SHAWN F. BROUSSEAU, ESQ.**
296 Washington Avenue Extension          **STEVEN EDWIN MACH, ESQ.**
Albany, New York 12203
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On August 8, 2018, Christina L. Facci-Brahler ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York State law against Montgomery County; Michael J. Amato, Sheriff of Montgomery County; and Justin Cramer, Under Sheriff of Montgomery County ("Defendants"). Plaintiff asserted eight causes of action related to alleged

1

discrimination she endured while employed as a Correction Officer at Montgomery County Correctional Facility and sought $1,000,000 in compensatory damages, $100,000 in punitive damages against Defendants Amato and Cramer,[1] and attorneys' fees.  *See generally* Dkt. No. 1.  Following motion practice, Plaintiff's remaining claims against Defendants are: (i) discrimination pursuant to the Equal Protection Clause of the Fourteenth Amendment and the New York State Human Rights Law ("NYSHRL"); and (ii) retaliation pursuant to the NYSHRL.  *See* Dkt. Nos. 18, 29, & 82.

Trial is set to commence on March 10, 2025.  *See* Dkt. No. 92.  Presently before the Court are motions *in limine* from Plaintiff and Defendants, Dkt. Nos. 98, 107 (the "Motions"), and corresponding responses in opposition, Dkt. Nos. 109-110, 112.  The Court heard further argument from the Parties during the final pretrial conference on March 4, 2025, and considered additional supplemental briefing that was submitted by the Parties on March 5 and 6, 2025.  *See* Dkt. Nos. 114-117.  For the reasons set forth below, Plaintiff's motion *in limine* is denied, and Defendants' motion *in limine* is granted in part, denied in part, and reserved in part.

## II.  STANDARD OF REVIEW

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted).

---

[1] Pursuant to the Memorandum-Decision and Order on Defendants' Motion for Summary Judgment, Plaintiff is only permitted to seek punitive damages on her Fourteenth Amendment discrimination claim.  *See* Dkt. No. 82 at 16.

"[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287). Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41. The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

**III.    DISCUSSION**

Familiarity with the alleged facts of this case, as set forth in the Second Amended Complaint, Dkt. No. 58, and the Court's prior decisions, Dkt. Nos. 18, 29, & 82, is presumed. In summary, Plaintiff alleges that she was discriminated and retaliated against when she was suspended without pay for thirty days from employment with the Montgomery County Correctional Facility after bringing her personal cellphone to work. *See generally* Dkt. No. 58. Plaintiff was also arrested and criminally charged for the same conduct, but the charges were ultimately dropped, and Plaintiff was never convicted. *See* Dkt. No. 76-32 at ¶¶ 19-24; Dkt. No. 80-10 at ¶¶ 19-24. According to Plaintiff, a white employee of the Montgomery County Correctional Facility, Stephanie Crewell, also brought her personal cellphone into the facility but was never arrested, charged, served disciplinary papers, or placed on any suspension. *See* Dkt. No. 76-32 at ¶¶ 10-11; Dkt. No. 80-10 at ¶¶ 10-11. Defendants deny the allegations against them and instead contend that Plaintiff and Crewell are not comparable, since Plaintiff allegedly engaged in "much more egregious conduct" including, *inter alia*, allowing an inmate to use her phone in an unsupervised manner and fraternizing with that inmate. See Dkt. No. 76-33 at 13-14.

### A. Plaintiff's Motion *in Limine*

Plaintiff seeks to preclude evidence related to a statement given by a former inmate of Montgomery County Correctional Facility, Taznee Wilcox (the "Wilcox Statement" or "Statement"). Ms. Wilcox asserts in the Statement that Plaintiff provided her cellphone to Ms. Wilcox on one instance and allowed her to use the phone in an unsupervised manner. *See* Dkt. No. 98 at 5-12; *see also* Dkt. No. 98-2. At the March 4, 2025 pretrial conference, Plaintiff's counsel clarified that the Motion also seeks to preclude a video recording of Ms. Wilcox giving the Statement to investigators. Plaintiff denies that she ever allowed Ms. Wilcox to use her phone and disputes the content of the Wilcox Statement. In addition, she contends that the Statement is inadmissible hearsay, that it is unreliable, and that no other evidence supports its content. *See* Dkt. No. 98 at 5. Plaintiff also argues that the introduction of the Wilcox Statement in any capacity would mislead the jury, confuse the issues to be tried, and unduly prejudice Plaintiff. *Id.* In response, Defendants argue, *inter alia*, that the Statement is not hearsay because it is not being offered for the truth of the matter asserted but rather for its effect on the listener. *See* Dkt. No. 112 at 3-4. For the same reason, Defendants contend that the video recording of the Wilcox Statement is non-hearsay and argue that, in addition, the video has indicia of reliability. *See* Dkt. No. 114 at 1-2. Defendants further contend that a limiting instruction would be sufficient to address any potential prejudice resulting from the admission of the video. *Id.* at 3.

The Court agrees with Defendants that the Wilcox Statement may be offered to show its effect on the listener. Fed. R. Evid. 801(c) has been interpreted to mean that a statement is considered non-hearsay where it is being offered to show such an effect. *See U.S. v. Dupree*, 706 F.3d 131, 136-37 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice.") (citing *George*

4

*v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990)). Here, Defendants offer the Wilcox Statement "not . . . for the truth of the matter asserted" but because "the fact that the statement (true or false) was made . . . [is evidence that Defendants had] a legitimate non-discriminatory reason" to arrest and charge Plaintiff, initiate a disciplinary proceeding against her, and suspend her for thirty days. Dkt. No. 112 at 3. Here, where Defendants' motivation for taking these actions is at issue, the Wilcox Statement is relevant to the information available to Defendants at the time and their rationale in taking the actions. *See, e.g.*, *Roberts v. Azize*, 767 Fed. Appx. 196, 199 (2d Cir. 2019) (summary order) (no hearsay where the "statement was relevant to show what information was available to Defendants to support the conclusion that they had probable cause to arrest" the plaintiff); *see also Boatright v. U.S. Bancorp*, No. 18-cv-7293, 2020 WL 7388661, at *3 n.1 (S.D.N.Y. Dec. 16, 2020) ("Defendants are relying on this testimony not for the truth of the matter asserted . . . but for the fact that other junior employees complained to Boatright's superiors that Boatright had mistreated them. The complaints—not whether they were well-founded or not—have independent evidentiary significance.") (citing *Dupree*, 706 F.3d at 136). Thus, so long as the Statement is introduced only to show its effect on Defendants, it is non-hearsay.

The Court also finds that the probative value of the Wilcox Statement is not outweighed by any prejudicial effect admitting the Statement may have. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403, the prejudice must be unfair . . . [and involve] some adverse effect beyond tending to prove a fact or issue that justifies admission."). *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 175 (2d Cir. 2000); *see also Iverson v. Surber*, 800 Fed. Appx. 50, 52 (2d Cir. 2020) ("Prejudice under [Rule 403] means unfair rather than harmful."). Here, as noted above, the Statement is probative of Defendants' knowledge at the time they arrested, charged, served disciplinary papers on, and suspended

5

Plaintiff. Plaintiff will have the opportunity present evidence establishing that Defendants' reliance on the Statement was unjustified or pretextual. And, as Defendants suggest, any prejudicial effect on Plaintiff can be cured by the issuance of a limiting instruction. *See* Dkt. No. 114 at 4; *see United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (affirming decision to admit potentially prejudicial evidence where the district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"); *see also United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions."). The Court finds that such an instruction is warranted here.

The above ruling applies to the video recording of the Wilcox Statement referenced in the Parties' supplemental briefing, as the Court finds that such evidence is largely indistinguishable from the Statement itself. *See* Dkt. Nos. 114, 115. However, the Court will entertain other objections to the video recording, including with respect to cumulativeness, as appropriate during trial.

Accordingly, Plaintiff's motion *in limine* is denied.

**B. Defendants' Motion *in Limine***

Defendants' motion seeks to preclude: (i) certain references and witness testimony related to the criminal prosecution of Plaintiff; (ii) certain testimony regarding Plaintiff's damages; (iii) lay opinions of Plaintiff's treating physicians; (iv) evidence regarding Plaintiff's social security disability benefits; (v) proof regarding other correction officers or jail employees possessing personal cellphones in Montgomery County Correctional Facility; and (vi) testimony and records of Laura Harrison. The Court addresses each request in turn.

### 1. References & Witness Testimony Concerning the Criminal Prosecution

Defendants assert that evidence and testimony concerning the arrest and criminal prosecution of Plaintiff should be precluded since Plaintiff's malicious prosecution claim was dismissed on summary judgment. *See* Dkt. No. 107-1 at 4-6. Plaintiff opposes, arguing that the evidence supports Plaintiff's remaining claims and that Defendants' decision to arrest, charge, and refer Plaintiff for prosecution also relates to Plaintiff's damages theory. *See* Dkt. No. 109 at 3-4.

As an initial matter, the Court notes that the Parties appear to agree, albeit for different reasons, that certain aspects of Plaintiff's criminal case are relevant to the claims to be tried. For example, Plaintiff includes various individuals associated with the criminal case on her witness list, including Montgomery County District Attorney Kelli McCoski, Assistant District Attorney Peter Califano, and criminal defense attorney Elmer Keach III. *See* Dkt. No 93. She also includes on her exhibit list the transcript of the criminal case's partial *Clayton* hearing, emails between Defendants and the District Attorney's office regarding the criminal prosecution, and materials from the District Attorney's criminal case file. *See* Dkt. No. 94. Additionally, Defendants include Investigator Joseph Kilmartin, Sr. on their witness list and represent that they intend to elicit testimony from him concerning Plaintiff's arrest, and they have also included the May 16, 2016 Incident Report and the August 3, 2016 Amended Information on their exhibit list. *See* Dkt. Nos. 101, 106. Moreover, as discussed above, Defendants seek to introduce the Wilcox Statement, which was crucial evidence in the criminal investigation and which Defendants concede was the "reason why defendants . . . charged the plaintiff [with] promoting criminal contraband" and was "the reason [Plaintiff] was referred . . . to the District Attorney." Dkt. No. 76-33 at 15; Dkt. No. 112 at 3. Thus, while Defendants argue for preclusion, they also seek to introduce as least certain evidence related to the criminal case, as does Plaintiff.

The Court agrees with the Parties, at least in part, that aspects of the criminal case are relevant to Plaintiff's remaining claims. While the criminal case was relevant to Plaintiff's malicious prosecution claim, Defendants are correct that the Court dismissed that claim in its entirety at summary judgment. *See* Dkt. No. 82 at 12-14. And with respect to Plaintiff's remaining discrimination and retaliation claims, Defendants are also correct that the only adverse employment action that Judge Kahn identified at summary judgment was Plaintiff's May 19, 2016 suspension from her position without pay for thirty days. *See id.* at 5-6, 11.[2] However, at the March 4, 2025 pretrial conference, Plaintiff's counsel argued that the arrest and charge also constitute adverse employment actions even if Judge Kahn made no such finding, and that these actions are also evidence of Defendants' discriminatory animus toward Plaintiff. The Court notes the interconnectedness of the arrest and associated criminal charge with Plaintiff's disciplinary charges and her suspension without pay for thirty days pending a determination on the disciplinary charges. Not only was Plaintiff arrested and charged three days *before* she was sent a notice of discipline and suspended without pay, but Defendants were signatories on both the notice of discipline and the criminal Information, *see* Dkt. No. 76-24 (Defendant Amato signing Notice of Discipline); Dkt. No. 76-17 (Defendant Cramer signing criminal Information), and the notice of discipline charges Plaintiff with violating the same sections of the penal code that the criminal Information charges her with violating. In other words, it is difficult, if not impossible, to separate the facts of Plaintiff's arrest and criminal charge from the facts of her suspension. Thus, at a minimum, the Court agrees with Plaintiff that the arrest and charge are relevant to whether

---

[2] While Plaintiff argues that "Judge Kahn already rejected" the argument that evidence related to the dismissed criminal case "is relevant only to the malicious prosecution claim," *see* Dkt. No. 3, the Court disagrees. Judge Kahn made no explicit or implicit finding with respect to the relevance of the criminal case at it pertains to Plaintiff's discrimination or retaliation claims. *See generally* Dkt. No. 82.

Defendants were motivated by discriminatory animus in making the decision to suspend Plaintiff from employment. However, evidence related solely to the dismissed malicious prosecution claim, or evidence that solely supports Plaintiff's newly proposed constructive discharge theory, which is discussed *infra*, will be deemed irrelevant and inadmissible. The Court will entertain objections to evidence related to Plaintiff's criminal case, including those pursuant to Fed. R. Evid. 403, as appropriate during trial consistent with the above ruling and reserves judgment on whether to preclude particular evidence related to Plaintiff's criminal case until the Parties can provide "the appropriate factual context." *Hennessy*, 840 F. Supp. 2d at 536 (citation omitted).

Accordingly, the portion of Defendants' Motion seeking to exclude references and evidence related to Plaintiff's criminal charges and prosecution is denied in part and reserved in part.

### 2. Evidence Concerning Plaintiff's Alleged Damages

Defendants next seek to limit evidence regarding Plaintiff's economic damages and preclude Plaintiff from testifying as to her inability to work since her arrest, arguing that it is the law of the case that Plaintiff's economic damages are limited to the period of time that she was suspended without pay, and that her failure to disclose any experts during discovery limits her ability to testify as to any other damages, including future lost earnings. *See* Dkt. No. 107-1 at 6-7. Plaintiff counters by contending that it is not the law of the case that her economic damages are limited to the suspension period and that she did not need to disclose an expert to sufficiently support her damages theory. *See* Dkt. No. 109 at 7-9.

First, contrary to the arguments Plaintiff makes in her March 6, 2025 letter, *see* Dkt. No. 116, the Court notes that Plaintiff has never brought a cause of action for constructive discharge and therefore will not be permitted to argue at trial that she was constructively discharged. *See*

9

*Green v. Brennan*, 578 U.S. 547, 558-60 (2016) (finding that constructive discharge is not merely a damages theory but a separate claim). Indeed, on review of this matter's pleadings and dispositive motion practice, Plaintiff has never even asserted that she was constructively discharged in the context of her discrimination or retaliation causes of action, let alone litigated the issue of whether such constructive discharge constituted an adverse employment action. *See generally* Dkt. Nos. 26, 58, 80. While the Second Amended Complaint references Plaintiff's "loss of her employment," Dkt. No. 58 at ¶ 72, such appears connected to Plaintiff's damages theory as it relates to her discrimination, retaliation, and the since-dismissed malicious prosecution claims. Alleging that Plaintiff was terminated[3] or that Plaintiff suffered a loss of employment is not a sufficient means by which to assert a constructive discharge theory. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). Here, Plaintiff has never alleged that she resigned or quit. *See Green*, 578 U.S. at 555 ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. *But he must also show that he actually resigned*.") (emphasis added) (internal citation omitted). To allow Plaintiff to alter her theory of liability now would severely prejudice Defendants. *See Roberts v. Ground Handling, Inc.*, No. 04-Civ-4955, 2007 WL 2753862, at *5 (S.D.N.Y. Sept. 20, 2007) ("To require defendant to incur additional costs and to

---

[3] It appears Plaintiff has since abandoned the argument that she was terminated. Instead, in her opposition to summary judgment and opposition to Defendants' motion *in limine*, Plaintiff states repeatedly that Defendants merely "sought her termination." Dkt. No. 80 at 5-6, 8-9, 13, 17, 19-20; Dkt. No. 109 at 3, 9.

change its strategy on the eve of trial because plaintiff has concocted a new theory three years into the litigation is simply not fair and would, in a real sense, unduly prejudice defendant.").

Second, the Court agrees with Plaintiff that it is not the law of the case that Plaintiff's economic damages are limited to the thirty-day period during which she was suspended without pay. While it is true that Judge Kahn identified Plaintiff's suspension without pay as an adverse employment action, he did not opine on any damages issues outside of Plaintiff's request for punitive damages and attorneys' fees. *See* Dkt. No. 82 at 5-6, 11, 14-16.

Third, it is undisputed that Plaintiff is entitled to seek economic damages for the thirty-day period she was suspended without pay. *See* Dkt. No. 107-1 at 6. And, as noted above, Plaintiff has never pursued a constructive discharge claim as a separate cause of action or as a part of her remaining causes of action so she will not be able to recover lost earnings for the period after she was separated from employment. *See, e.g.*, *Todaro v. Siegel Fenchel & Peddy, P.C.*, 2008 WL 11446818, at *6 (E.D.N.Y. Aug. 11, 2008) (in dismissing constructive discharge claim, holding "[Plaintiff] is precluded from offering evidence or arguing for an award of front pay or back pay following her resignation"); *see also Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 855 (2d Cir. 1985).[4] However, with regard to any other potential economic damages, the Court reserves judgment until the Parties can provide "the appropriate factual context." *Hennessy*, 840 F. Supp. 2d at 536 (citation omitted).

Finally, with respect to Plaintiff's failure to identify a damages expert, expert testimony is not necessary where damages—including those in the form of lost wages—can be "capable of measurement based upon known reliable factors without undue speculation." *Nnebe v. Daus*, No.

---

[4] This ruling does not foreclose Plaintiff's ability to recover compensation for emotional or other noneconomic damages that she may have incurred following the date of her separation.

06-cv-4991, 2024 WL 4182600, at *3 (S.D.N.Y. Sept. 13, 2024) (quoting, *inter alia*, *Myheal Techs., Inc. v. Fonar Corp.*, 100 F.3d 944, 944 (2d Cir. 1996)).  While Plaintiff must produce more than mere conjecture to establish compensatory damages, she is entitled to prove her damages through sufficient documentary evidence, such as payroll records or other admissible materials. *See Yan Zhao v. U.S.*, 273 F. Supp. 3d 372, 397 (W.D.N.Y. 2017).  Of course, Plaintiff may not rely on evidence that was not produced during discovery to prove her damages, and the Court will entertain objections to that effect if necessary at trial.

Accordingly, the portion of Defendants' Motion seeking to limit Plaintiff's economic damages and preclude Plaintiff from testifying as to any alleged inability to work is granted in part and reserved in part.

### 3. Lay Opinions of Plaintiff's Treating Physicians/Health Care Providers

Next, Defendants seek to preclude Plaintiff's treating physicians and health care providers from testifying, arguing that Plaintiff failed to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(C) because she did not disclose to Defendants a summary of the facts or opinions on which the physician or provider is expected to testify.  *See* Dkt. No. 107-1 at 7-8.  However, at the March 4, 2025 pretrial conference, Plaintiff's counsel indicated that the only treating physician Plaintiff intends to call to testify is Dr. Michael Dobbins, Plaintiff's psychiatrist.  In response, Defendants' counsel withdrew the portion Defendants' motion *in limine* seeking to preclude Plaintiff's treating physicians from testifying.  Accordingly, this portion of Defendants' Motion is denied as moot.

### 4. Evidence Regarding Plaintiff's Social Security Disability Benefits

Defendants also seek to preclude evidence regarding Plaintiff's social security disability benefits, and Plaintiff chose not to oppose that portion of Defendants' Motion in her opposition.

*See* Dkt. No. 109 at 9 n.1 ("Plaintiff does not oppose this branch of Defendants' motion and agrees that because no information related to this was produced in discovery by either rparty it therefore cannot be put in front of the jury at trial."). Accordingly, this portion of Defendants' Motion is granted on consent.

### 5. Evidence Concerning Other Correction Officers' or Jail Employees' Possession of Personal Cellphones in the Jail

Defendants additionally seek to bar Plaintiff from eliciting testimony or seeking to admit evidence regarding other correction officers or jail employees having possessed personal cellphones in the Montgomery County Correctional Facility and not having been disciplined or arrested as a result. *See* Dkt. No. 107-1 at 9-10. Defendants argue that, during her deposition, Plaintiff "made vague, conclusory and unsupported allegations that other, unidentified corrections officers and jail employees routinely brought their personal cell phones" into the jail and that similar testimony should be precluded at trial because it is unsupported and speculative. *Id.* Plaintiff counters that testimony concerning Defendants' treatment of other employees is relevant to establishing discriminatory intent, and that the jury is entitled to weigh the treatment of other employees to determine whether Plaintiff was subjected to discriminatory treatment. *See* Dkt. No. 109 at 10.

The Court agrees with Plaintiff that testimony concerning disparate treatment is directly relevant to Plaintiff's discrimination theory, but also agrees with Defendants that such testimony must be in admissible form and may only be elicited after a proper foundation is laid. The Court must assess this at the time of trial. *See Hennessy*, 840 F. Supp. 2d at 536. Accordingly, at this juncture, the Court reserves judgment on this portion of Defendants' Motion.

### 6. Laura Harrison

Finally, Defendants seek to preclude the testimony and records of Laura Harrison, Plaintiff's "Life Coach." *See* Dkt. No. 107-1 at 10-11. However, at the March 4, 2025 pretrial conference, Plaintiff's counsel indicated that they no longer intend to call Ms. Harrison to testify at trial. Accordingly, this portion of Defendants' Motion is denied as moot.

## IV.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion *in limine*, Dkt. No. 98, is **DENIED**, as set forth in Section III(A) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion *in limine*, Dkt. No. 107, is **GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART**, as set forth in Section III(B) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 7, 2025
   Albany, New York

Anne M. Nardacci
U.S. District Judge